**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| STEVE MEDINA, | : | |
| | : | Civil No. 06-1521 (RBK) |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | **OPINION** |
| WARDEN CHARLES E. SAMUELS, et al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

---

**APPEARANCES:**

     STEVE MEDINA, Petitioner <u>pro se</u>
     #52653-066
     F.C.I. Fort Dix
     Unit 5852, P.O. Box 7000
     Fort Dix, New Jersey 08640

     DOROTHY J. DONNELLY, ESQ.
     United States Attorney's Office
     402 East State Street, Suite 430
     Trenton, New Jersey 08608
     Counsel for Respondents

**KUGLER, District Judge**

     This matter is before the Court on petitioner Steve Medina's

("Medina") application for habeas corpus relief under 28 U.S.C. §

2241, challenging the prison disciplinary proceedings and

sanctions imposed upon him, which resulted in the his

disciplinary segregation and loss of good conduct time.[1]  Medina

---

     [1]  In late 2005, Medina filed a civil complaint, <u>Medina v. Morton, et al.</u>,  Civil No. 05-4293 (RBK), seeking damages and

seeks expungement of the disciplinary finding and restoration of his good conduct time, and a new hearing to refute the disciplinary charge.

On or about May 10, 2006, the named respondent, Warden Samuels at FCI Fort Dix, filed a motion to dismiss the petition. Petitioner filed objections to the answer on June 2, 2006.  The Court has reviewed all documents submitted and, for reasons now discussed, will deny the motion to dismiss.  Nevertheless, the Court also finds that the petition should be denied for lack of merit.

<u>BACKGROUND</u>

At the time the alleged disciplinary infraction occurred, Medina was confined at FCI Fort Dix in Fort Dix, New Jersey, serving a 235-month prison sentence, imposed on January 20, 1999 in the United States District Court for the Eastern District of Pennsylvania, following his conviction for possession of a firearm by a convicted felon, in violation of 18 U.S.C. §

---

injunctive relief with respect to a prison disciplinary action. In an Opinion and Order filed on March 31, 2006, this Court dismissed the complaint without prejudice and severed the habeas claim, which essentially seeks to invalidate the disciplinary findings and sanctions at issue.  The March 31, 2006 Order directed the Clerk of the Court to establish a separate docket for Medina's habeas claim under 28 U.S.C. § 2241, and Medina was permitted to amend his habeas petition to name the proper custodian as respondent.  Accordingly, this action was docketed as directed and a copy of the March 31, 2006 Opinion and Order was made part of this docket at Document Entry Nos. 2 and 3.

2

922(G)(1).  Medina's projected release date, anticipating accrual of good conduct time, is January 1, 2017.

On November 3, 2004, Medina received Incident Report No. 1278580, charging him with the prohibited conduct of possessing a hazardous tool, in violation of Code 108.  The Reporting Officer, Lt. J. Davenport, Jr., reported that, on November 3, 2004, at approximately 10:07 a.m., he had conducted a routine shakedown of petitioner's room and noticed that a small hole had been cut into petitioner's mattress.  Upon a search of the hole, the Reporting Officer recovered a six inch metal rod sharpened at one end with a handle of electrical tape and shoe lace on the other end.  Medina denied any knowledge of the instrument.

On November 5, 2004, an initial hearing was held before the Unit Discipline Committee ("UDC"), and the matter was referred to a Disciplinary Hearing Officer ("DHO") for final disposition based on the seriousness of the disciplinary infraction.  A Notice of Disciplinary Hearing was provided to Medina on November 5, 2004, which petitioner signed as indicated on the report.  The signed form shows that Medina chose not to have a staff representative or to present witnesses.  Medina also signed the Inmate Rights Form on November 5, 2004, which notifies the inmate of his right to have a staff representative.

The DHO hearing was held on November 8, 2004, and Medina again waived his right to a staff representative and also denied

the charge against him.  DHO Morton concluded that petitioner had committed the prohibited act of possession of a sharpened instrument in violation of Code 104.  DHO Morton based his conclusion on the Incident Report itself, a photograph of the sharpened instrument, and Medina's statement at the hearing.  He sanctioned Medina as follows: 40 days loss of good conduct time, 60 days in disciplinary segregation, 270 days forfeiture of non-vested good conduct time for Code 104, and a recommendation for a disciplinary transfer.  DHO Morton explained that these sanctions were imposed to impress petitioner and other inmates as to the seriousness of the offense.  The DHO Hearing Report indicates that a copy of the report was given to Medina on November 12, 2004.

Medina filed a Regional Administrative Appeal on December 8, 2004.  This appeal was rejected as untimely in a response dated January 6, 2005.  However, petitioner was permitted to show, via staff verification, that his untimely filing was not due to his own fault.  (Regional Administrative Remedy Appeal No. 361840-R1).  Medina resubmitted his regional appeal on or about January 28, 2005.  The appeal again was rejected because Medina did not provide verification that his untimeliness was not his own fault. (Regional Administrative Remedy Appeal No. 361840-R3). Thereafter, on or about June 15, 2005, Medina filed a Central Office Administrative Remedy Appeal.  The Central Office also

rejected Medina's administrative appeal as untimely.  (Central Office Remedy Appeal No. 361840-A1 Response).

Medina argues that he has attempted to exhaust his administrative remedies in a timely manner.  First, Medina states that he did not receive the DHO Report until February 23, 2005. He contends that the Regional Office response to his administrative appeal wrongly states that Medina received the DHO Report on November 12, 2004, as indicated on the DHO Report. Medina claims that he repeatedly requested BP-10 appeal forms from his unit team while he was in disciplinary segregation, but did not receive one until December 8, 2004.  He immediately filed his BP-10 appeal form at that time, allegedly without having received a copy of the DHO Report.

Medina also alleges that when he attempted to get staff verification about the late filing of his administrative appeal, Case Manager Reiser refused to help.  Medina further accuses Reiser of providing him with the wrong mailing address for Medina's BP-11 appeal form to the Central Office.  This Central Office appeal form allegedly was mailed on February 25, 2005. When petitioner finally received the correct address, the appeal form was mailed on June 7, 2005.

## II.   CLAIMS PRESENTED

Medina claims that he was denied procedural due process during his disciplinary proceedings.  Namely, he claims that he was denied his right to a staff representative, and that DHO Morton denied petitioner an opportunity to defend himself.

Respondents argue that the petition should be dismissed for failure to exhaust administrative remedies.  Alternatively, respondents contend that there was no deprivation of due process.

## III.   DISCUSSION

A.   Standard of Review

Medina seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

B.  Exhaustion of Administrative Remedies

Respondents principally argue that the petition should be dismissed because Medina failed to exhaust his administrative remedies, set forth at 28 U.S.C. § 542.10 et seq., in appealing the DHO's decision.  Petitioner argues that he has exhausted his administrative remedies and that any procedural default with respect to administrative remedies should be excused because his right to due process was violated.

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where

exhaustion would not promote these goals.  <u>See</u>, <u>e.g.</u>, <u>Gambino v. Morris</u>, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); <u>Lyons v. U.S. Marshals</u>, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); <u>Carling v. Peters</u>, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

Here, it appears that Medina attempted to exhaust his administrative remedies, but his attempts were rejected as untimely.  This Court finds that any further effort by petitioner in exhausting his administrative remedies at this juncture would be futile.  Moreover, a sufficient factual record already has been developed with respect to the disciplinary proceeding at issue sufficient for review of Medina's claim alleging denial of due process.  Thus, for the most part, the purposes of the exhaustion requirement do not readily apply in this case, and the Court will review the merits of the petition rather than dismiss it on this procedural ground.  Respondents' motion to dismiss will be denied accordingly.

8

C.   <u>Applicable Regulations</u>

The Bureau of Prisons ("BOP") has specific guidelines for inmate disciplinary procedures, which are codified at 28 C.F.R. § 541.10 <u>et</u> <u>seq</u>.  Prohibited acts are categorized according to the severity of the conduct.  Code Level 100s are deemed the "Greatest", code level 200s as "High", and proceeding to 400 level codes as "Low Moderate."  The Prohibited Acts Code and Disciplinary Severity Scale is set forth at 28 C.F.R. § 541.13 Tables 3-5.  Incident reports are prepared in accordance with § 541.14 and are referred to the UDC for an initial hearing pursuant to § 541.15.

The UDC hearing is typically conducted within three working days of the incident, but may be extended for good cause pursuant to § 541.15(b) and (k).  The UDC may refer the matter to the DHO for further proceedings pursuant to § 541.15(f).  In this case, referral of the incident report to the DHO was mandatory under § 541.13(a)(2), because it was designated as a high category offense and the UDC does not have the authority to disallow good conduct time.  Disallowance of good conduct time credits for high category offenses, pursuant to Sanction B.1 in Table 3, must be imposed under 28 C.F.R. § 541.13(a)(2).

DHO hearing procedures are set forth at § 541.17.  These procedures require the following: (a) 24-hour advance written notice of charge before inmate's initial appearance before the

9

DHO; this right may be waived, § 541.17(a); (b) an inmate shall
be provided a staff representative at the DHO hearing, if so
desired, § 541.17(b); (c) an inmate is entitled to make a
statement and to present documentary evidence at the DHO hearing;
the inmate may also call witnesses to testify on his behalf, but
may not himself question the witnesses, § 541.17(c); (d) the
inmate is entitled to be present throughout the hearing, except
during a period of deliberation or when institutional security
would be jeopardized, § 541.17(d).  The DHO shall prepare a
record of the proceedings that documents the advisement of the
inmate's rights, the DHO's findings, the DHO's decision, the
specific evidence relied upon by the DHO, and a brief statement
of the reasons for imposition of sanctions.  28 C.F.R. §
541.17(g).  A written copy of the DHO's decision and disposition
must be provided to the inmate ordinarily within 10 days.  Id.

These procedures are intended to meet or exceed the due
process requirements prescribed by Wolff v. McDonnell, 418 U.S.
539 (1974).  See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418
(M.D. Pa. 1994).

D.  Merits of Petitioner's Claims

1.  *There Was No Denial of Procedural Due Process*

The Due Process Clause of the Fifth or Fourteenth Amendments
provides that liberty interests of a constitutional dimension may
not be rescinded without certain procedural protections.  U.S.

10

CONST. amend. XIV.   In Wolff v. McDonnell, supra, the Supreme
Court set forth the requirements of due process in prison
disciplinary hearings.  An inmate is entitled to (1) written
notice of the charges and no less than 24 hours to marshal the
facts and prepare a defense for an appearance at the disciplinary
hearing; (2) a written statement by the fact finder as to the
evidence relied on and the reasons for the disciplinary action;
and (3) an opportunity "to call witnesses and present documentary
evidence in his defense when to do so will not be unduly
hazardous to institutional safety or correctional goals."  Wolff,
418 U.S. at 563-71.  An inmate is also entitled to an inmate
representative in some cases, and a written decision by the
factfinder as to evidence relied upon and findings.  See Von
Kahl, 855 F. Supp. at 1418 (citing Wolff, 418 U.S. at 563-72).
However, in Wolff, the Supreme Court held that, while prisoners
retain certain basic constitutional rights, including procedural
due process protections, prison disciplinary hearings are not
part of criminal prosecution, and an inmate's rights at such
hearings may be curtailed by the demands and realities of the
prison environment.  Id. at 556-57; Young v. Kann, 926 F.2d 1396,
1399 (3d Cir. 1991).

Here, Medina asserts that he was denied his right to a staff
representative at his DHO hearing, and that DHO Morton did not

11

give him an opportunity to defend himself.  This Court finds
these claims to be meritless.

First, this Court notes that the procedures set forth in
Wolff and Von Kahl, were followed in all respects.  Medina was
provided with advance notice of the charge against him, and had
more than 24 hours notice before the DHO hearing was scheduled.

Second, the DHO set forth the reasons for his decision and
the evidence relied upon in reaching that decision.  Moreover,
the record clearly shows that Medina declined his right to a
staff representative and waived his right to call witnesses at
his hearing.  (Notice of Discipline Hearing, dated and signed
November 5, 2004).  The Incident Report also indicates that
Medina declined to call witnesses.  The Reporting Officer, Lt. J.
Davenport, Jr., took petitioner's statement at the time and
indicated that Medina denied the charge but "displayed a good and
cooperative attitude."  (Incident Report No. 1278580).  Thus, the
record does not support Medina's contentions that he was denied
an opportunity to present evidence or to have a staff
representative.

While inmates do not have a right to counsel in prison
disciplinary proceedings, a staff representative may be required
if the inmate is illiterate or if complex issues are involved.
The record depicts Medina as an articulate person who ably
presented defenses to the charge against him.  He is not

illiterate and possessed a good understanding of the issues. Moreover, the issues were not complex.  There is simply nothing in the record to show that Medina was denied staff representation or that his situation demanded representation.  Medina also has shown no evidence to contradict his signature on the Notice of Discipline Hearing, which confirms that he was made aware of his right to a staff representative and to call witnesses, and waived both at that time.

Additionally, there is no evidence that Medina was precluded from presenting a defense.  The record shows that he was given the opportunity to make a statement with respect to the charges against him.  He was permitted, but declined to call witnesses. The DHO's decision actually refers to, and takes into account, petitioner's statement at the hearing.  In fact, the DHO's decision was based in part on Medina's testimony, namely, Medina's admission about the length of time he was assigned to the bunk where the sharpened instrument was found.  Medina submits no evidence, other than his bald allegation, to contradict the record and show that he was denied the opportunity to refute the charge against him and present a defense.

Therefore, this Court finds no denial of due process and this claim will be denied for lack of merit.

2.  *There Was Sufficient Evidence to Support the Charge*

The Supreme Court has held that procedural due process is
not satisfied "unless the findings of the prison disciplinary
board are supported by some evidence in the record."
Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v.
Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991).  The Supreme Court
has stated:

> Prison disciplinary proceedings take place in a highly
> charged atmosphere, and prison administrators must
> often act swiftly on the basis of evidence that might
> be insufficient in less exigent circumstances.  The
> fundamental fairness guaranteed by the Due Process
> Clause does not require courts to set aside decisions
> of prison administrators that have some basis in fact.
> Revocation of good time credits is not comparable to a
> criminal conviction, and neither the amount of evidence
> necessary to support such a conviction, nor any other
> standard greater than some evidence applies in this
> context.

Hill, 472 U.S. at 456 (internal citations omitted).  Moreover,
the Court stated:  "The Federal Constitution does not require
evidence that logically precludes any conclusion but the one
reached by the disciplinary board.  Instead, due process in this
context requires only that there be some evidence to support the
findings made in the disciplinary hearing."  Id. at 457.

Here, there is sufficient evidence noted by the DHO in
reaching his determination.  The DHO's Report demonstrates that,
after the initial investigation set forth in the Incident Report,
and the DHO's consideration of all the relevant evidence, the DHO
found that the greater weight of evidence supported a finding

14

that Medina did commit the prohibited act in violation of Code
104.  The DHO's determination clearly took into account Medina's
claims of innocence, but rejected petitioner's explanation as
follows:

> Although you claim you didn't know anything about the
> weapon, you did acknowledge it was your bed, you did make
> it, you do sleep in it, and you have had the bed for
> approximately forty-five days.  I found you [sic] denial of
> the charge to be an effort to have the charge expunged.  I
> found the forty-five days you stated you had the bed ample
> time to ensure it was free of contraband.  I did find the
> staff involved in the incident to be credible as he has no
> vested interest in you or the outcome of the report.

(DHO Report at Block V).  Thus, the DHO's Report plainly shows
that it was "not so devoid of evidence that the findings of the
[DHO were] without support or otherwise arbitrary." Hill, 472
U.S. at 457.

The DHO apparently attached more weight to the confirmed
facts that (1) Medina admitted the bed where the sharpened
instrument was found was his bunk, and that he had slept in the
bed and made his bed for 45 days, and (2) Medina has a duty to
keep his area contraband free in the 45 days he had been assigned
to the bunk, in contrast to Medina's unestablished and self-
serving claims that he was unaware of the sharpened instrument
and that the weapon did not belong to him.

Therefore, based upon this evidence as relied upon by the
DHO, and without any contradictory evidence submitted by
petitioner, except his self-serving denial of the prohibited act

15

as charged, the Court finds that Medina's right to due process was not violated by the determination of the DHO.  The procedures enunciated in <u>Wolff</u>, supra, were complied with, and there was "some evidence", in accordance with <u>Hill</u>, <u>supra</u>, to support the DHO's finding of guilt.  <u>See</u> <u>Sinde v. Gerlinski</u>, 252 F. Supp.2d 144, 150 (M.D. Pa. 2003)("If there is 'some evidence' to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff")(quoting <u>Hill</u>, 472 U.S. at 457).

     Therefore, there is no basis to expunge the incident report and sanctions imposed and demand a new disciplinary hearing because Medina has not proven that he was denied due process or that there was insufficient evidence to support the disciplinary finding.  Accordingly, this habeas petition will be denied for lack of merit.

**CONCLUSION**

     Based upon the foregoing, the respondents' motion to dismiss for failure to exhaust administrative remedies will be denied. Nevertheless, Medina's petition for a writ of habeas corpus under 28 U.S.C. § 2241 will be denied for lack of merit.   An appropriate Order accompanies this Opinion.


                              S/Robert B. Kugler
                              ROBERT B. KUGLER
                              United States District Judge


Dated: November 14, 2006

16